STATE OF WASHINGTON, Plaintiff,

v.

TIME OIL COMPANY and Burlington
Northern Railroad Company,
Defendants,

City of Tacoma, Intervenor.

UNITED STATES of America, Plaintiff,

v.

TIME OIL COMPANY, Defendant.

Nos. C85–478TB, C86–990TB.

United States District Court,
W.D. Washington.

Feb. 19, 1988.

Kathleen D. Mix, Asst. Atty. Gen., State
of Wash., Olympia, Wash., for State of
Wash.

Jackson Fox, Asst. U.S. Atty., Seattle,
Wash., Sharon Gwatkin, E.P.A., Office of
Regional Counsel, EPA Region X, Seattle,
Wash., for U.S.

William H. Bode, Spriggs, Bode & Holl-
ingsworth, Washington, D.C., Ray Graves,
McGavick, Graves, Beale & McNerthney,
Tacoma, Wash., for Time Oil Co.

Charles Brown, Seattle, Wash., for Bur-
lington Northern.

Warren Peterson, Gordon, Thomas,
Honeywell, Malanca, Peterson & Daheim,
Tacoma, Wash., for B & W Inv. Co.

G.S. Karavitis, Dept. of Public Utilities,
Tacoma, Wash., for City of Tacoma.

ORDER GRANTING GOVERNMENTS'
CROSS–MOTION FOR SUMMARY
JUDGMENT ON THE "INNOCENT
LANDOWNER DEFENSE"

BRYAN, District Judge.

THIS MATTER comes before the court
on a cross-motion of the United States and
the State of Washington for an order
granting summary judgment on the issue

of whether Defendant Time Oil may assert the "innocent landowner defense" as described in 42 U.S.C. § 9607(b). The issue of whether Time Oil has made a showing sufficient to assert this defense was raised by the defendant itself in its own motion for summary judgment. The Court heard oral argument on Time Oil's motion January 15, 1988. Following oral argument, Time Oil's motion was denied, and the Court reserved ruling on the Governments' cross-motion for summary judgment. Supplemental memoranda addressing the issue of whether Time Oil's sublessee Drexler had released hazardous substances on the subject property was invited by the Court and was subsequently received and considered. The Court has considered the cross-motion, documents filed in support and opposition, and the file.

The Court now concludes the Governments' cross-motion should be granted. The Court's reasoning follows.

### DISCUSSION

*I. Applicable Law.*

42 U.S.C. § 9607 defines liability under CERCLA. 42 U.S.C. § 9607(b) provides in relevant part:

#### (b) Defenses

There shall be no liability under subsection (a)[1] of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—...

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant ... if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took

precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; ...

42 U.S.C. § 9601(35) is a new section of CERCLA that was enacted in 1986 for the purpose of protecting innocent landowners from liability. It supplements the definition of "contractual relationship" found in 42 U.S.C. § 9607(b)(3), and provides in relevant part:

(35)(A) The term "contractual relationship", for the purpose of section 9607(b)(3) of this title includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession, unless the real property on which the facility concerned is located was acquired by the defendant after the disposal or placement of the hazardous substance on, in, or at the facility, and one or more of the circumstances described in clauses (i), (ii), or (iii) is also established by the defendant by a preponderance of the evidence:

(i) At the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility....

In addition to establishing the foregoing, the defendant must establish that he has satisfied the requirements of section 9607(b)(3)(a) and (b) of this title.

In the case at bar, Time Oil, in asserting this defense pursuant to subsection (i) has a burden of prudent inquiry in that it

... must have undertaken, at the time of acquisition, all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability. For purposes of the preceding sentence the court shall take into account any specialized knowledge or experience on the part of the defendant, the relationship of the purchase price to the value of the property if un-

---

1. 42 U.S.C. § 9607(a) describes "persons" sub-    ject to liability, and the nature of that liability.

contaminated, commonly known or reasonably ascertain-able information about the property, the obviousness of the presence or likely presence of contamination at the property, and the ability to detect such contamination by appropriate inspection. 42 U.S.C. § 9601(35)(B).

## II. Summary Judgment Burdens.

■ The 42 U.S.C. § 9607(b)(3) defense (hereinafter the "(b)(3) defense") is an affirmative defense, and Time Oil has the burden of establishing by a preponderance of the evidence that it is entitled to this defense. In a motion for summary judgment, the Governments have the burden of showing there is no genuine issue as to any material fact, and that the Governments are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In responding to a summary judgment motion, the adverse party may not rest upon the mere allegations or denials of its pleading, but must respond by setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In the motion at bar, Time Oil has the burden to make a showing sufficient to establish the existence of each element in the innocent landowner defense on which Time Oil would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A failure of proof offered by Time Oil concerning an essential element of the innocent landowner defense will result in summary judgment for the Governments. *Celotex.* The evidence must be viewed in the light most favorable to Time Oil. *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985).

## III. Discussion of Elements of the § (b)(3) Defense and the Evidentiary Showings of the Parties.

First, the court is satisfied that the underlying condition of a release of hazardous substance on the property has been shown.

A release of such a hazardous substance for CERCLA purposes is broadly defined as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." (42 U.S.C. § 9601(22), *U.S. v. Metate Asbestos Corp.,* 584 F.Supp. 1143, 1148 (D.Ariz.1984).)

A substance is defined as a hazardous substance under CERCLA if it is designated in 42 U.S.C. § 9602, or if it is listed under any of several other legislative acts, including § 3001 of the Solid Waste Disposal Act, several sections of the Clean Water Act of 1977, and the Toxic Substances Control Act.[2] The term "hazardous substance" does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under 42 U.S.C. § 9601(14).

■ It is undisputed that sampling done on the Time Oil property has revealed the presence of substances considered hazardous under CERCLA. Groundwater sampling conducted for the Environmental Protection Agency detected transdychloroethylene ("DCE") and trichloroethylene ("TCE"). Separate groundwater sampling done for the EPA and for Time Oil showed large amounts of 1, 1, 2, 2 tetrachloroethane ("TCA"). Soil samples at several depths have revealed the presence of the following substances:

| | |
|---|---|
| Phenol | Hexachloroethane |
| 2, 4 Dimethylphenol | 1, 1, 2, 2 Tetrachloroethane |
| Pentachlorophenol | Trichloroethylene |
| 2, 4, 6 Trichlorophenol | 1, 2 Trans–Dichloroethylene |
| | Perchloroethylene |
| Nitrobenzene | 2, 4 Diethyl Phthalate |
| Hexachlorobenzene | Bis 2 EthylHexyl Phthalate |
| | Butyl Benzyl Phthalate |
| | Dibutyl Phthalate |
| | Dioctyl Phthalate |
| Benzo G, h, i Perylene | Hexachlorobutadiene |
| Acenaphthene | Lead |
| Chrysene | Cadmium |
| Pyrene | Chromium |
| Fluorene | Zinc |
| Anthracene | |
| Fluoranthene | |
| Benzo (a) Anthracene | |

(Affidavit of Philip M. Wong in Support of Motion, p. 9.)

**2.** The definition of "hazardous substance" is fully set out in 42 U.S.C. § 9601(14). Some 714 substances are currently considered hazardous under CERCLA.

The Court is satisfied that some of the contaminants found on the Time Oil property were found in amounts in excess of the amounts that would have occurred in petroleum during the oil refining process. Other substances found on the property would not have occurred due to the refining process. The "petroleum exclusion," CERCLA § 104(a)(2), will not operate to exclude Time Oil from liability.

A. There has been an insufficient showing that the release has been caused solely by a third party.

In the Court's statement to counsel following oral argument on January 15, 1988, the Court indicated as follows:

I am satisfied that Drexler had an indirect contractual relationship with Time Oil. I think, however—and this is a very critical issue on the Governments' Motion for Summary Judgment—I am not sure whether there is any material fact issue as to whether Drexler caused hazardous substances to be released onto the property. That is an issue, in my mind, that your documents may resolve, and if that is not an issue of fact and if they did make that kind of a release, that, in my judgment, would probably entitle the Governments to summary judgment. Transcript of January 15, 1988 Proceedings, p. 51, 1. 16–25.

The Court's subsequent review of the evidence indicating the presence of hazardous substances on the Time Oil property has resolved to the Court's satisfaction that there clearly has been a "release" within the meaning of CERCLA on the subject property. The Court further concludes that the issue of whether Drexler, in particular, released any of these hazardous substances is not dispositive to deciding the Governments' cross-motion for summary judgment on the innocent landowner defense. It is enough that the substances are there, and it is not necessary for purposes of this motion to trace their release to one entity or another. Rather, it becomes Time Oil's burden in asserting the affirmative (b)(3) defense to present evidence sufficient to show the Court that there remain specific factual issues as to whether the releases of hazardous substances were caused solely by an act or omission of someone other than a Time Oil employee or agent, or someone other than a person acting in connection with a contractual relationship with Time Oil. *Celotex*.

As the Court noted in its oral statement on January 15, 1988, Time Oil has raised issues as to whether Time Oil knew, or had reason to know, if the property was contaminated at the time of purchase. The defendant has also raised questions as to whether Time Oil's subsidiary, National Oil Company, contributed to the releases of hazardous substances; or whether Time Oil itself contributed to the releases of hazardous substances. The resolution of the issues of National Oil's and Time Oil's alleged contributions apparently will be primarily dependent upon this Court's resolution of whether the waste oil and other materials stored and used on the property contained the hazardous substances later found on the property. The evidence on this issue is circumstantial. Affidavits from experts have been submitted by both the plaintiffs and the defendant, and the experts' assertions have been challenged in turn. In a motion for summary judgment, the court is reluctant to base conclusions on such competing assertions of experts. Accordingly, resolution of this issue will occur at a later time. However, concerning the issue of National Oil's contamination of the property, the court notes that it is not disputed that National Oil deposited filter cake on the property. It is alleged the filter cake contained lead, cadmium, and chromium. (Brinkman Affidavit, p. 9.) Time Oil does not dispute this, but argues it is irrelevant. (Time Oil's Memorandum in Opposition, p. 7, footnote 7.) It is not irrelevant. Rather, it is an indication that Time Oil cannot successfully assert the section (b)(3) defense with respect to the activities of National Oil because Time Oil cannot offer proof that the release was caused *solely* by a third party for whom Time Oil is not responsible.

The last operator on the property was Time Oil's sublessee, Drexler. As men-

tioned above, the Court is satisfied Drexler was in an indirect contractual relationship with Time Oil. There is substantial evidence to indicate Drexler ran a sloppy operation, even to the point of prompting Time Oil to seek a preliminary injunction to prevent Time Oil from suffering "immediate and irreparable injury to its premises from the draining of heavy black oil onto the ground at plaintiffs' railroad spur and from defendants allowing plaintiffs' premises to remain in a constant state of disrepair." (Time Oil's Motion for a Temporary Restraining Order, p. 1, 1. 25–26.) It is clear that if the Court concludes that the waste oil and other substances handled by Drexler contained the hazardous substances later found on the property, Time Oil will be liable for the harm caused by Drexler's operation. At this time, because of the above-mentioned concerns about expert testimony, the Court is not prepared to make an absolute finding that Drexler's waste oil contained those hazardous substances. On this motion, however, the Governments are still entitled to judgment as a matter of law when Time Oil fails to carry its burden of bringing out specific facts to show that some third party was solely responsible for the release.

B. There has been an insufficient showing that Time Oil exercised due care or took precautions with respect to the property.

The final elements Time Oil must show in order to assert the innocent landowner defense are that it exercised due care and took precautions with respect to the hazardous substances concerned, taking into consideration the characteristics of the hazardous substances in light of all relevant facts and circumstances. This is a burden Time Oil has failed to meet. Although the Court is not prepared at this time to say that all the releases of hazardous substances on the property can be directly linked to the waste oil operations of National Oil, Time Oil, or Drexler, it is clear Time Oil allowed Drexler to run a sloppy operation. Time Oil did not exercise due care to prevent the property from becoming contaminated by this sublessee.

*IV. Conclusion.*

The defendant has failed to make showings sufficient to carry its burdens with respect to the release of hazardous substances by a third party, and an exercise of due care. It is not necessary for purposes of this motion to determine exactly how much blame may be apportioned to each of the entities which operated reprocessing facilities on the property. It is enough to note that the innocent landowner defense cannot be available to Defendant Time Oil, when Time Oil has failed to present specific facts to indicate that some other party having no employment, subsidiary, or contractual connection with Time Oil is *solely* responsible for releasing all of the hazardous substances which have come to be found on the subject property.

## ORDER

For the foregoing reasons, it is now

ORDERED the Governments' Cross–Motion for Summary Judgment on the "Innocent Landowner Defense" is GRANTED.