**ORGANIC CHEMICAL SITE PRP GROUP, an unincorporated Voluntary Association located in Michigan, Plaintiff,**

v.

**TOTAL PETROLEUM INCORPORATED, a Michigan Corporation, Defendant.**

No. 5:97–CV–168.

United States District Court,
W.D. Michigan,
Southern Division.

July 12, 1999.

Russell E. Yates, Carlos Leal, Yates & Leal, L.L.P., Denver, CO, for Organic Chemicals Site PRP Group.

Troy Taylor, James G. Fausone, Thomas J. Fayfer, Fausone, Taylor & Bohn, Northville, MI, for Total Petroleum, Inc., a Michigan Corporation.

John M. Barkett, Coll Davidson Smith Salter & Barkett, Miami, FL, arbitrator.

## OPINION

ENSLEN, Chief Judge.

In this action, Plaintiff Organic Chemical Site PRP Group ("the PRP Group" or "the Group") seeks to establish that Defendant Total Petroleum Incorporated ("Total") is legally liable under federal and state law for all or a portion of the costs of remediating a Superfund-listed property located in Grandville, Michigan. The matter is now before the Court on Organic's motion for partial summary judgment, Total's motions for summary judgment and for partial summary judgment and Organic's motion to strike Total's reply briefs for its summary judgment and partial summary judgment motions.

## FACTS

This case involves a twenty-acre parcel of industrial property in Grandville, Michigan ("the Site"), which has been declared a Superfund site by the Environmental Protection Agency ("EPA"). A five-acre portion of the Site ("the OCI Site") is currently owned by Organic Chemicals, Incorporated ("OCI"), a member of the PRP Group. The OCI Site has been used at various times as a petroleum refinery, petroleum storage facility and chemical plant. Between 1941 and 1955, the OCI Site was owned by Mid–West Refineries and was used first as a petroleum refinery and, after 1945, as a petroleum transport and storage facility. In 1955, Leonard Refineries, Incorporated, the predecessor in interest to Total, acquired the assets of Mid–West Refineries, including the OCI Site, and continued to use the OCI Site for petroleum storage. In 1964, the OCI Site was sold to Cutler Oil Company. Two years later, the OCI Site was reacquired by McClanahan Refineries, Incorporated, a direct subsidiary of Leonard Refineries. In 1968, McClanahan Refineries entered into a land sale contract with Spartan Chemical Company for the sale of the OCI Site. The contract was completed in 1979 and legal title to the property transferred at that time. OCI, a Spartan Chemicals subsidiary, operated a solvent reclamation and chemical manufacturing facility on the property between 1968 and 1980.

In September 1983, the EPA found that the groundwater under the entire twenty-acre tract was contaminated with organic solvents and placed the Site on the National Priorities List created by the Comprehensive Environmental Response and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. In 1991, OCI and many of its customers formed the PRP Group to respond to EPA actions regarding the Site. Total participated in the PRP Group's meetings until some time in 1992, but did not contribute financially to the Group. In January 1992, the EPA issued a Unilateral Administrative Order ("UAO"), ordering certain identified potentially responsible parties ("PRPs"), including OCI and many of its customers, to take specific clean up action at the Site. Since then, the PRP Group has undertaken various remediation activities to halt the migration of contaminated groundwater from the Site. The PRP Group estimates that it has spent approximately $1,000,000 to comply with the UAO issued by the EPA for the Site and certain de minimis members of the PRP Group have deposited another $1,457,375 into a trust fund to pay for

additional remediation at the Site and to compensate the EPA for its prior remediation expenses. Total has not contributed to this effort.

On July 11, 1997, the PRP Group filed its complaint in this Court, alleging that Total owned or operated the OCI Site when releases of hazardous materials occurred and is jointly and severally liable for and/or liable for contribution towards the expenses incurred by the PRP Group in remediating the Site. The PRP Group brings its claims under CERCLA; the Solid Waste Disposal Act ("SWDA"), as amended by the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 *et seq.*; Michigan's Natural Resources and Environmental Protection Act ("NREPA"), M.C.L. §§ 324.101 *et seq.*; and Michigan common law.

### DISCUSSION

Both parties have filed motions for summary judgment or partial summary judgment. Total seeks partial summary judgment on the PRP Group's CERCLA claims because they are inappropriately framed or premature, as well as summary judgment on its liability under CERCLA, RCRA and NREPA. The PRP Group, in turn, seeks partial summary judgment on Total's liability under CERCLA, RCRA and NREPA. In addition, the PRP Group has filed a motion to strike the reply briefs that Total filed in support of its motions for summary judgment and partial summary judgment.

### I. Motion to Strike

■ The PRP Group argues that, based on the date its responses to Total's Motions for Summary Judgment and Partial Summary Judgment were initially submitted to the Court, Total filed its reply briefs three days late and that these briefs should be struck as a sanction for this untimeliness. Although its pleadings were rejected for failure to comply with technical or procedural provisions of the local rules, the Group argues that, under Fed. R.Civ.P. 5(e), pleadings not rejected for substantive reasons must be considered filed on the date they were initially presented. Total responds that its replies were timely, based on the date that the PRP Group's corrected pleadings were accepted for filing. Even if Total's reply briefs were technically late, the PRP Group has not shown bad faith on Total's part, prejudice from the delay or any other justification for imposing sanctions. The Court will not participate in the parties' bickering and declines to strike Total's reply briefs.

### II. Motions for Summary Judgment

A court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *City Management Corp. v. U.S. Chemical Co., Inc.*, 43 F.3d 244, 250 (6th Cir.1994). The court must view the facts presented in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and draw all reasonable inferences in the nonmovant's favor, *Rakoczy v. Traveler's Insurance Co.*, 959 F.Supp. 777, 781 (E.D.Mich.1997). A party seeking summary judgment must specify the basis upon which judgment should be granted and identify that portion of the record which demonstrates the absence of a genuine issue of material fact. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994). If this burden is met, the non-moving party must provide facts, supported by evidence in the record, "upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir.1995).

### A. Total's Motion for Partial Summary Judgment

Total argues that summary judgment should be granted against the PRP Group

on Counts I, III and VII of its claim and on its request for attorneys fees and costs. Total argues that PRPs are only entitled to contribution under CERCLA and may not impose joint and several liability on other PRPs, as requested in Count I of the complaint; that the contribution claims under CERCLA and Michigan law (Counts III and VII) are premature; and that the PRP Group cannot recover the attorneys fees included in its request for relief.

■ The Sixth Circuit has recently determined that PRPs cannot bring cost recovery actions under CERCLA to impose joint and several liability on other PRPs, but are limited to bringing actions for contribution. *Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 349 (6th Cir.1998). Although this rule was announced after the PRP Group filed its complaint, the decision must be applied retroactively. *In re Federated Department Stores*, 44 F.3d 1310, 1317 (6th Cir. 1995). Accordingly, summary judgment must be granted to Total on the PRP Group's claim for joint and several liability under 42 U.S.C. § 9607.[1]

■ Total next argues that a contribution claim under either CERCLA or Michigan common law is premature, since the PRP Group has not established the full amount of its response costs or demonstrated that it has been or will be forced to pay more than its share of these costs. In its CERCLA contribution claim (Count III), the PRP Group requests contribution toward actually incurred response costs and a declaration of Total's liability for that portion of future response costs properly allocable to Total. The PRP Group may certainly seek contribution for costs already incurred. *See, e.g., Cadillac Fairview/California, Inc. v. Dow Chemical Co.*, 840 F.2d 691, 694–95 (9th Cir.1988); *Wickland Oil Terminals v. Asarco, Inc.*, 792

F.2d 887, 893 (9th Cir.1986). In addition, where future response costs are likely to be incurred, a declaratory judgment on proportional liability is an appropriate remedy, even if the exact amount of future costs is unknown. *Kelley v. E.I. DuPont de Nemours and Co.*, 17 F.3d 836, 845 (6th Cir.1994). Because soil remediation has not yet begun on the OCI Site, the PRP Group is certain to incur future response costs. Accordingly, declaratory judgment regarding Total's CERCLA liability is appropriate.

■ Total seeks summary judgment on the PRP Group's claim for contribution under Michigan's contribution statute, M.C.L. § 600.2925a, and Michigan common law on the same grounds. Under Michigan law, contribution is available to persons who "become jointly or severally liable in tort for the same injury . . ." and who pay more than their pro rata share of the joint or several liability. M.C.L. § 600.2925a. To state a cause of action, a plaintiff must allege that common liability exists between itself and the defendant and that it is "exposed to greater liability for damages than would be its pro rata share." *Moisenko v. Volkswagen AG*, 10 F.Supp.2d 853, 855 (W.D.Mich.1998). Accordingly, to survive summary judgment, a plaintiff must simply provide enough evidence to create a genuine issue of material fact with respect to each of these allegations. The PRP Group has submitted evidence suggesting that Total is partially responsible for the contamination at the Site and, because Total has not contributed money to or otherwise participated in the site remediation, that the PRP Group is exposed to greater liability than its pro rata share. Therefore, summary judgment on this claim must be denied.

Total also argues that the Group seeks contribution on claimed current and future

---

1. The PRP Group argues that the Court is required to find that Total is a liable party, as defined by Section 107 of CERCLA, 42 U.S.C. § 9607, before it may order the contribution under Section 113 of CERCLA, 42 U.S.C. § 9613, requested in Count III, and that Count I is simply requesting a declaration of liability. If Count I is included solely for this purpose, it is redundant, because, as the PRP Group asserts, the Court will determine Total's liability in deciding the CERCLA contribution claim. In this case, granting summary judgment on Count I will not affect the relief which the PRP Group now states that it seeks.

response costs of over $7,000,000, although its current expenditures amount to only $2,000,000. If summary judgment is not awarded on the contribution claim as a whole, Total requests a limited summary judgment order, clarifying that the PRP Group may not be awarded more money in contribution than it has actually expended. Such an order is inappropriate. Any contribution award will, by definition, be limited to that portion of the Group's proven response costs properly allocated to Total. The Court does not have to enter a partial summary judgment to limit the PRP Group's recovery to its demonstrated damages.

Finally, Total seeks an order declaring that the PRP Group is not entitled to attorneys fees and costs. Attorneys fees may be available as part of a prevailing party's damages under either CERCLA or RCRA. *Key Tronic Corp. v. United States,* 511 U.S. 809, 820, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994); 42 U.S.C. § 6972(e). Given that neither party has prevailed at this time, Total's motion regarding these damages is premature and will be denied.

### B. Total's Motion for Summary Judgment

Total also seeks summary judgment on the PRP Group's action as a whole. Total argues that it is not liable for releases occurring between 1968 and 1979 under CERCLA or NREPA, because it held only a security interest in the OCI Site during that period, or for releases occurring prior to 1968, because any such releases would fall under CERCLA's petroleum exclusion. In addition, Total argues that the PRP Group has failed to prove that the Site creates an imminent and substantial danger to human health or the environment, as required under RCRA, and that the RCRA claim is barred by EPA enforcement efforts. If the PRP Group's federal claims are dismissed, Total urges the Court to remand the pendent state claims.

### 1. Security Interest Exception to CERCLA and NREPA Liability

CERCLA provides that the current owner or operator of a facility and the owner or operator of a facility at the time of any release of hazardous waste are liable for remediation. 42 U.S.C. §§ 9601(20)(A), 9607(a). However, the term "owner" is defined to exclude "a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility." 42 U.S.C. § 9601(20)(A). The party who invokes this provision to protect itself from CERCLA liability carries the burden of showing that it is entitled to the exemption. *Organic Chemicals Site PRP Group v. Total Petroleum, Inc.,* 6 F.Supp.2d 660, 663 (W.D.Mich.1998). To do so, "the party must prove 'both that [it] holds indicia of ownership primarily to protect its security interest in the [subject property] and that it did not participate in the management of the [property].'" *Kemp Industries, Inc. v. Safety Light Corp.,* 857 F.Supp. 373, 384 (D.N.J.1994) (quoting *In re Bergsoe Metal Corp.,* 910 F.2d 668, 671 (9th Cir.1990)).

The parties agree that, prior to 1968, Total or its predecessors in interest owned the OCI Site. On April 12, 1968, Leonard Refineries and OCI's parent company entered into a land sale contract for the OCI Site. Under that contract, Leonard Refineries retained legal title, while OCI took possession of the property. The contract was completed and legal title to the OCI Site was transferred to OCI's parent company in 1979. The land sale contract notes that the property is subject to a 1964 lease and sublease between Cutler Oil Company, one of Total's predecessors, and Leonard Refineries, Inc., another of Total's predecessors. Under these agreements, Cutler Oil leased the OCI Site to Leonard Refineries and Leonard Refineries subleased the property to Cutler Oil.[2] There is no

---

**2.** As noted above, Cutler Oil purchased the OCI Site from Leonard Refineries in 1964 and sold the property to McClanahan Refineries, a direct subsidiary of Leonard Refineries, in 1966. The 1966 sale was also made subject to the lease and sublease.

evidence in the record that Cutler Oil, Leonard Refineries or Total actually used or occupied the OCI Site after 1968, pursuant to the lease and sublease. Further, Lois Mool, a former employee of Total's property management division, testified that Total took no active role in managing properties sold under land sale contracts and, to her knowledge, did not use or manage the OCI Site after entering into the land sale contract in 1968. The lease and sublease expired in 1979.

■ As a matter of law, Total has satisfied the first element of this test by showing that it held title to the OCI Site as a land contract vendor. Under Michigan law, a land contract vendor holds legal title to the subject property only as a security interest to ensure payment on the land contract. *Darr v. First Federal Savings & Loan Ass'n of Detroit*, 426 Mich. 11, 393 N.W.2d 152, 155–56 (1986) (noting that the bare legal title held by land contract vendor constitutes personal property, rather than real property); *Snediker Developers, Ltd. Partnership v. Evans*, 773 F.Supp. 984, 987 (E.D.Mich.1991); M.C.L. § 324.20101(1)(z)(i) (explicitly defining a vendor's interest under a land sale contract as indicia of ownership held primarily to protect a security interest).

The PRP Group argues that the retained lease interest gave Total the opportunity to participate in management of the OCI Site. However, the security interest exception excludes only those parties who actually participate in management and not those who merely retain the capacity or unexercised right to control activities at the facility. 42 U.S.C. § 9601(20)(A); 42 U.S.C. § 9601(20)(F). The critical question is not "what rights [a defendant] had, but what it did." *In re Bergsoe Metal Corp.*, 910 F.2d at 672. *See also East Bay Municipal Utility District v. U.S., Department of Commerce*, 142 F.3d 479, 482–83 (D.C.Cir.1998); *Elf Atochem North America v. United States*, 914 F.Supp. 1166, 1169–70 (E.D.Pa.1996); *Kemp Industries*, 857 F.Supp. at 395. The mere fact that Total held lease rights to the OCI Site,

without more, is insufficient to defeat Total's motion for summary judgment.

■ The PRP Group presents no direct evidence which shows that Total exercised any rights under the lease or sublease after 1968 and instead relies on an attempt to discredit Ms. Mool's testimony by arguing that she was hired after the land sale contract ended and had no direct knowledge of Total's use of the OCI Site between 1968 and 1979. The nonmoving party in a summary judgment motion, however, must do more than create "some 'metaphysical doubt as to the material facts' " or provide a scintilla of evidence in support of its position. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348). The existence of a lease/sublease agreement and potential credibility issues regarding the uncontradicted deposition testimony of Ms. Mool create only a "metaphysical doubt" or scintilla of evidence. *See Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 150 (6th Cir.1995) (noting that a nonmoving party may not defeat a properly supported motion for summary judgment solely by arguing that the moving party's witnesses are not credible). Because the PRP Group has failed to create a genuine issue of material fact as to Total's eligibility for the security interest exception to CERCLA liability after the land sale contract was entered on April 12, 1968, Total is entitled to summary judgment that it is not liable under CERCLA for releases occurring after that date.

■ NREPA contains a similar security interest exception from owner/operator liability. The Michigan statute, however, explicitly includes "a vendor's interest under a recorded land contract" as an exempt security interest. M.C.L. § 324.20101(z)(i). Further, the Michigan law spells out the activities which might be considered "participation in management." A security interest holder does not participate in the management of a facility unless it makes decisions about the borrower's

environmental compliance, assumes responsibility for the borrower's hazardous substance handling or disposal methods, or exercises managerial control over environmental compliance or operational aspects of the facility. M.C.L. § 324.20101a(1). A mere capacity to influence or an unexercised right to control the facility is insufficient to show participation in management. M.C.L. § 324.20101a(2). Given the evidence discussed above, the Court finds that Total is entitled to summary judgment that it is not liable under NREPA for releases occurring after April 12, 1968.

### 2. Petroleum Exclusion Exception to CERCLA Liability

Under CERCLA, "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated" as such is not considered a hazardous substance for CERCLA purposes. 42 U.S.C. § 9601(14). This petroleum exclusion applies to both used and unused petroleum products and includes hazardous substances inherent in unused petroleum products or added to unused petroleum products in the refining process; it does not apply to hazardous substances which are added to petroleum products during use. *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 266 (3d Cir. 1992); *Wilshire Westwood Assoc. v. Atlantic Richfield Corp.*, 881 F.2d 801, 805 (9th Cir.1989); *Dartron Corp. v. Uniroyal Chemical Co.*, 917 F.Supp. 1173, 1183 (N.D.Ohio 1996); *Niecko v. Emro Marketing Co.*, 769 F.Supp. 973, 981–82 (E.D.Mich.1991). Thus, courts have not applied the petroleum exclusion where the concentration of hazardous substances in released petroleum products was higher than their concentration in the virgin product. *Cose v. Getty Oil Co.*, 4 F.3d 700, 704 (9th Cir.1993); *Washington v. Time Oil Co.*, 687 F.Supp. 529, 532 (W.D.Wash. 1988). In addition, refining waste may not fall within the exclusion, either because it is not petroleum, *Cose*, 4 F.3d at 705–07 (finding that the water and bottom sediments which naturally separate from crude oil during transportation and storage,

known as "tank bottoms," are not petroleum or petroleum fractions), or because it contains hazardous substances not derived from petroleum, *United States v. Western Processing Co., Inc.*, 761 F.Supp. 713, 721–22 (W.D.Wash.1991) (finding that tank bottoms which include heavy metals sloughed from the rusting holding tank are not covered by the petroleum exclusion). Because the petroleum exclusion is best treated as an exception to a statutory prohibition, Total carries the burden of showing that this exclusion applies. *Organic Chemicals*, 6 F.Supp.2d at 663.

Total asserts that the only evidence of pre–1968 releases provided by the PRP Group relate to releases of petroleum products. In support of its motion, Total points to the deposition testimony of Henry Takens, a former employee of Midwest Refinery, discussing two releases of crude oil or gasoline occurring prior to 1968, and the deposition testimony and affidavits of Dr. James E. Bruya and Alan Van Norman, two of the PRP Group's expert witnesses, characterizing some of the contamination on the OCI Site as degraded petroleum or petroleum products.

To defeat summary judgment, the PRP Group relies on evidence that various hazardous substances normally contained in petroleum products have been found in the soil at the OCI Site in concentrations greater than would be expected in unused petroleum products. The PRP Group misunderstands the significance of these findings. Although Dr. Bruya determined that the concentration of polynuclear aromatic hydrocarbons ("PAHs") found in sludge from the OCI Site was slightly higher than would be expected in unused petroleum, he also found that the material was consistent with diesel or fuel oil and that the PAHs had become concentrated due to volatilization and biodegradation of other petroleum components over time. Dr. Bruya's affidavit proves only that petroleum products released on the OCI Site have undergone natural transformation. CERCLA does not, by its terms, impose

liability for disposal of non-hazardous substances which later become hazardous. 42 U.S.C. § 9607(a)(2) (making the owner or operator of a facility "at the time of the disposal of a hazardous substance" liable). To avoid the petroleum exclusion, the hazardous substances in a petroleum product must be elevated at the time of release. *See City of New York v. Exxon Corp.*, 766 F.Supp. 177, 187 (S.D.N.Y.1991); *Western Processing Co.*, 761 F.Supp. at 722.[3]

■ However, the petroleum exclusion does not relieve Total of all potential CERCLA liability, because the PRP Group has provided evidence suggesting that Total or its predecessors released other hazardous substances on the OCI Site prior to 1968. Henry Takens, a former employee of Mid–West Refineries, testified in deposition that Mid–West Refineries released tank bottoms, waste water from the agitators, sludge from the topping unit, and burnt materials from the cracking unit to ditches on the OCI Site. Corey A. Bertelson, an expert on petroleum refineries, asserts that the agitator waste waters probably contained hazardous substances in the form of caustic. The affidavit of Alan Van Norman suggests that tetrachloroethylene and cis-di-chloroethene, hazardous substances not normally found in petroleum products, were detected in a pipeline used by Total. This evidence is sufficient to create a genuine issue of material fact with respect to Total's CERCLA liability for pre–1968 releases and summary judgment as to this portion of the Group's CERCLA claim is denied.

**3.** The PRP Group seems to argue that the petroleum exclusion is inapplicable whenever the concentration of hazardous petroleum-related substances found in soil or groundwater samples at a CERCLA site is higher than would be expected in unused petroleum products. If this were the case, however, any petroleum spill would be reachable under CERCLA by delaying litigation until the released material began to degrade and the concentration of certain hazardous substances increased. Congress cannot have intended this result. While some courts, including this one, have described this limitation on the petroleum ex-

### 3. RCRA Liability

Total also seeks summary judgment on its liability under RCRA, arguing that this claim is barred by the EPA's enforcement efforts and that the Group has failed to show imminent and substantial danger from contamination on the OCI Site. The PRP Group responds that the EPA has determined that soil and groundwater contamination at the Site pose an imminent and substantial danger to public welfare, human health or the environment, but has only taken action sufficient to bar private enforcement with respect to the contaminated groundwater.

■ Private enforcement actions may not be brought under RCRA if the EPA has commenced and is diligently pursuing one of four specific remedial actions. 42 U.S.C. § 6972(b)(2)(B). Because Total relies on the UAO issued by EPA to the PRP Group and the PRP Group's remediation efforts on the Site, it appears to be invoking the provision which bars private enforcement actions if the EPA has obtained a court order or issued an administrative order under § 106 of CERCLA or § 7003 of RCRA and a responsible party is diligently conducting remedial action pursuant to that order. 42 U.S.C. § 6972(b)(2)(B)(iv). However, this provision bars private enforcement actions "only as to the scope and duration of the administrative order." 42 U.S.C. § 6972(b)(2)(B). The only UAO issued by the EPA for the Site and the only remediation that has been conducted address

clusion in a shorthand which suggests that concentration of hazardous components at any stage makes the petroleum exclusion inapplicable, *see, e.g., Cose*, 4 F.3d at 704, *Organic Chemicals*, 6 F.Supp.2d at 663; *Time Oil*, 687 F.Supp. at 532, this result would not square with the language or intent of CERCLA. Those cases which provide a well-reasoned basis for imposing liability on petroleum-related releases focus on the composition of the product at the time of release, not the later concentration of contaminant in the soil. *Exxon Corp.*, 766 F.Supp. at 187; *Western Processing Co.*, 761 F.Supp. at 722.

groundwater contamination exclusively. Therefore, the PRP Group's RCRA claim, which addresses both groundwater and soil contamination, is not barred. *See A–C Reorganization Trust v. E.I. DuPont de Nemours,* 968 F.Supp. 423, 430–31 (E.D.Wis.1997); *Fishel v. Westinghouse Elec. Corp.,* 617 F.Supp. 1531, 1538–39 (M.D.Pa.1985).

 The PRP Group has also provided sufficient evidence on the merits of its claim to avoid summary judgment. In 1997, the EPA issued a Record of Decision ("ROD") related to soil and groundwater contamination on the Site, which found a substantial risk to passersby, trespassers or persons working on the Site. The soil-related contaminants of concern addressed in the ROD include PAHs, lead, polychlorinated biphenyls ("PCBs") and dioxan. Lead and PAHs, although often associated with solvents and other chemicals products, are also inherent in many petroleum products. The PRP Group has provided evidence that Total spilled or disposed of petroleum on the OCI Site. Based on this evidence, the Court finds that the PRP Group has created a genuine issue of material fact regarding Total's RCRA liability and Total's motion for summary judgment on the RCRA claim must be denied.

**4. Public Nuisance Liability**

 Total also seeks summary judgment on the PRP Group's public nuisance claim, arguing that, as a matter of law, it cannot be responsible for any public nuisance created by the disposal or release of hazardous substances during the time period that it held the OCI Site as a land contract vendor. This argument ignores the evidence suggesting that Total or its predecessors may have released petroleum products or other hazardous substances prior to entering into the land sales contract in 1968. Under Michigan law, a public nuisance is an unreasonable interference with a right common to all members of the public. *Adkins v. Thomas Solvent Co.,* 440 Mich. 293, 487 N.W.2d 715, 720 n. 8 (1992). Violations of laws intended to preserve public health, safety and welfare are presumed to create a public nuisance. *Hadfield v. Oakland County Drain Commissioner,* 430 Mich. 139, 422 N.W.2d 205, 211 (1988). The alleged release by Total of petroleum and other hazardous substances may constitute a public nuisance by unreasonably interfering with the public's right to be free from exposure to such materials and by violating CERCLA or NREPA. Summary judgment on this count is denied.

**C. The PRP Group's Motion for Partial Summary Judgment on Liability**

The PRP Group also filed a motion for partial summary judgment as to Total's liability under CERCLA, RCRA and NREPA. For the reasons given in the analysis of Total's motion for summary judgment, the PRP Group's motion must be denied as to Total's CERCLA and NREPA liability after April 12, 1968 and for any claims seeking a declaration of joint and several liability under CERCLA. The PRP Group's remaining claims require more detailed analysis.

To meet its initial burden in its motion for summary judgment, the PRP Group, as the party with the burden of proof at trial, must provide sufficient credible evidence to establish each element of its claim. *See Williams v. Allied Automotive,* 704 F.Supp. 782, 783 (N.D.Ohio 1988). In this case, the PRP Group has provided credible evidence that Mid–West Refineries, Total's predecessor, spilled or released gasoline, waste water from holding and processing tanks, and sludge and other waste materials from processing tanks on the OCI Site prior to 1968. The PRP Group has also provided evidence that hazardous substances, including tetrachloroethylene, cis-dichloroethene, PAHs, benzo(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene, dibenzo(a,h)anthracene, indeno(1,2,3–cd)pyrene, lead and PCBs, are present at the OCI Site and, based on the EPA's analysis, may present an imminent and substan-

tial danger to public health, welfare or the environment.

■ To succeed in its CERCLA claim, the PRP Group must show, that Total owned or operated the OCI Site at the time of a release of hazardous substances. 42 U.S.C. § 9607. Although the PRP Group has provided evidence that, prior to 1968, Total released refinery wastes, which were arguably not covered by the petroleum exclusion, the Group has not presented sufficient evidence to demonstrate that these non-petroleum releases contained hazardous substances. Therefore, the Court finds that summary judgment is not appropriate on the PRP Group's pre–1968 CERCLA claims.

■ To succeed in its RCRA claim, the PRP Group must provide sufficient evidence to establish that the conditions at the OCI Site may present an imminent and substantial endangerment; that the endangerment stems from the handling, storage, treatment, transportation or disposal of any solid or hazardous waste; and that Total contributed or is contributing to such handling, storage, treatment, transportation or disposal. 42 U.S.C. § 6972(a)(1)(B); *Organic Chemicals Site PRP Group*, 6 F.Supp.2d at 665. The PRP Group has presented some evidence that disposal of solid or hazardous materials on the Site may present an imminent and substantial endangerment to public welfare, human health or the environment and that Total has released petroleum and other hazardous wastes on the Site. However, its evidence directly links the imminent and substantial endangerment to OCI's release of solvents, not Total's petroleum releases. Although the PRP Group's evidence is sufficient to defeat Total's motion for summary judgment, it is insufficient to establish Total's liability. Summary judgment on the PRP Group's RCRA claim is denied.

■ The Group also moves for summary judgment on its NREPA claim. While NREPA is similar to CERCLA, it defines certain terms more narrowly. For instance, under NREPA, the former owner or operator of a facility is liable for a hazardous release at the facility only if the party owned or operated the facility when the release occurred and was "responsible for an activity causing a release or threat of release." M.C.L. § 324.20126(1)(b). In addition, while CERCLA classifies any site on which hazardous substances have been released as a "facility," 42 U.S.C. § 9601(9), NREPA limits its definition of "facility" to those sites on which the concentration of hazardous substances released exceed criteria established by the Michigan Department of Environmental Quality. M.C.L. §§ 324.20120a(1), 324.20101(o). The PRP Group points to no evidence showing that the more stringent standards of NREPA have been met, simply asserting that, because Total is liable under CERCLA, it is also liable under NREPA. The PRP Group's motion for summary judgment on its NREPA claim is denied.

### CONCLUSION

For the reasons given above, the PRP Group's Motion to Strike is denied; Total's Motion for Partial Summary Judgment is granted with respect to the PRP Group's claims for imposition of joint and several liability on Total under CERCLA and denied in all other respects; Total's Motion for Summary Judgment is granted with respect to CERCLA and NREPA liability after April 12, 1968 and denied in all other respects; and the PRP Group's Motion for Partial Summary Judgment on Liability is denied in its entirety. Accordingly, Count I and V are dismissed and Counts III, IV, V and VI are limited to liability for releases occurring prior to April 12, 1968.