The **CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA, Plaintiff,**

v.

**PECK IRON & METAL CO., INC., Defendants.**

Civ. A. No. 92–506.

United States District Court, E.D. Virginia, Richmond Division.

Feb. 2, 1993.

Richard K. Bennett, McSweeney, Burtch & Crump, Richmond, VA, for plaintiff.

Timothy M. Kaine, Mezzullo & McCandlish, Richmond, VA, for Pocket Money.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on defendant Pocket Money Recycling Company, Inc.'s ("Pocket Money's") motion for judgment on the pleadings. The issue presented is whether Chesapeake & Potomac Telephone Company of Virginia ("C & P"), as a private party plaintiff in this action, is entitled to recover its attorneys' fees and costs of litigation as necessary "response costs" under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). The United States has briefed this matter to argue further that, should the Court award fees and costs to C & P, there is no waiver of sovereign immunity by the United States as a defendant.

### I. *Recovery of Attorneys' Fees—The "American Rule"*

C & P in its prayer for relief demands judgment "3. For costs, prejudgment interest, post judgment interest, and attorneys' fees against all defendants; ..." (Complaint at 36.) Pocket Money contends that these costs and fees are not recoverable in this action, relying principally upon the "American Rule"—which states that a party cannot recover attorneys' fees unless they are provided for by contract or statute. *Runyon v. McCrary,* 427 U.S. 160, 185, 96 S.Ct. 2586, 2601, 49 L.Ed.2d 415 (1976); *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). C & P does not dispute the applicability of the American Rule, but argues that the language of CERCLA, especially when read in conjunction with its overriding purpose, contemplates recovery of the costs and fees sought by C & P in this lawsuit. As is the case with so many issues arising under CERCLA, legal authority on this issue is divided.[1]

### A. Does the American Rule Preclude Recovery of the Costs and Fees Sought by C & P?

Pocket Money claims that CERCLA does not provide for the recovery of attorneys' fees or litigation costs by a private party plaintiff and, thus, that the American Rule precludes C & P from recovering these fees and costs in this case. Judge Bryan recently endorsed this position in *Board of Supervisors of Fauquier Co. v. Fiberglass Eng'g Co., Inc.,* C.A. No. 89-1454-A (E.D.Va.1990). His opinion illustrates how some courts have employed the American Rule to deny attorneys' fees and litigation costs to private party plaintiffs in cost recovery actions brought under CERCLA:

> Had Congress wanted to make an allowance of attorney's fees an entitlement for a successful plaintiff, it could easily have specifically done so.... Although—as the court has already noted—an Act like CERCLA is generally liberally construed, it is well settled that an exception to the so-called "American Rule" on attorney's fees must be specifically carved out in the statute.

Mem.Op. at 6–7.

C & P argues that the costs of "removal or remedial action" that may be collected by the

---

1. The two judicial circuits to weigh in on this issue have arrived at different results. *Compare General Elec. Co. v. Litton Indus. Automation Systems, Inc.,* 920 F.2d 1415 (8th Cir.1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991) (allowing recovery of attorneys' fees and litigation costs by private party CERCLA plaintiff) with *Stanton Road Assoc. v. Lohrey Enterprises,* 984 F.2d 1015 (9th Cir.1993) (denying such relief).

United States, a State or an Indian tribe, and the costs of "response" that may be recovered by a private party, *both* include the costs of "enforcement activities."[2] This argument is predicated on CERCLA § 101(25), which provides:

> The terms "respond" or "response" means remove, removal, remedy, and remedial action; all such terms (including the terms "removal" and "remedial action") include *enforcement activities* related thereto.

42 U.S.C. § 9601(25) (emphasis added). Pocket Money, however, contends that a potentially responsible private party, like C & P, cannot step into the government's shoes and perform "enforcement activities" at all.[3]

■ The language of CERCLA, however, simply does not jibe with Pocket Money's argument that private parties cannot perform "enforcement activities." CERCLA § 107(a)(4)(B) allows "any ... person" other than "the United States Government or a State or an Indian tribe" to recover "costs of response" which, by definition, include costs of "enforcement activities." CERCLA § 101(25). Congress specifically included "enforcement activities" in the definition of " 'respond' or 'response' "—the terms *particularly applicable to cost recovery actions by private litigants.* See CERCLA §§ 101(25)

and 107(a)(4)(B). If Congress did not contemplate that private parties could perform "enforcement activities," it would have defined only the terms applicable to governmental entities—i.e., " 'remove or removal' " and " 'remedy' or 'remedial action,' " *see* CERCLA §§ 107(a)(4)(A), 101(23) and (24)— to include "enforcement activities," or it would have defined enforcement activities as applying only to actions brought by the federal government. It did not; instead, it included "enforcement activities" as a defined element of a private "response."

The unsubstantiated assumption made by the *T & E Industries* court that private parties cannot perform "enforcement activities" is simply unsupported by the explicit terms of CERCLA. *See Shapiro v. Alexanderson*, 741 F.Supp. 472, 480 (S.D.N.Y.1990) (the reasoning of *T & E Industries* "contradicts Congress' definition of 'respond' and 'response' in 42 U.S.C. § 9601(25)"). The Eighth Circuit has endorsed this interpretation of CERCLA, holding that "[a] private party cost-recovery action such as this one is an enforcement activity within the meaning of the statute." *Litton*, 920 F.2d at 1422.[4] The Court concurs with these decisions, and holds that the language of CERCLA—expressly designating the costs of enforcement activities as recoverable by private parties in

2. The costs of CERCLA "enforcement activities" include attorneys' fees. *See, e.g., Pease & Curren Refining, Inc. v. Spectrolab, Inc.*, 744 F.Supp. 945, 951 (C.D.Cal.1990).

3. Pocket Money's position receives support from the short-sighted approach taken by the District of New Jersey:

> Plaintiff's argument that because response costs include "enforcement activities related thereto" they should be entitled to attorney fees is without merit. While plaintiffs may bring an action for recovery of response costs, they may not bring an action to enforce CERCLA's clean-up provisions against another private entity. Thus, private parties do not incur "enforcement costs" as contemplated by CERCLA.

*T & E Indus., Inc. v. Safety Light Corp.*, 680 F.Supp. 696, 708 n. 13 (D.N.J.1988).

4. Pocket Money attempts to distinguish *Litton* on the ground that the private party plaintiff in that case, which the court permitted to recover attorneys' fees, was not, like C & P, also a potentially responsible party under CERCLA. The *Litton* court noted:

> These purposes [of CERCLA] would be undermined if a *non-polluter (such as GE)* were forced to absorb the litigation costs of recovering its response costs from the polluter.

920 F.2d at 1422 (emphasis supplied).

The Court holds, however, that the distinction advanced by Pocket Money is one without meaning. Under CERCLA, private parties, as well as the government, are encouraged to take the initiative to clean up environmental waste. As long as a party like C & P is not able to foist upon other polluters the share of its fees and costs attributable to *its own* percentage of the pollution, it should be treated no differently under the statute—at least in terms of cost recoupment— than an innocent private party. For example, if C & P was 25% responsible for the waste at the C & R Battery Site, the Court would allow it to recoup 75% of its fees and costs, whereas a wholly innocent private party might be able to recover as much as 100%. As long as the ultimate remedy is structured in such an equitable fashion, the Court is not persuaded that C & P's non-innocent status renders *Litton* any less useful as precedent or the award of fees and costs to C & P any less justified.

"response cost" actions—satisfies the American Rule, and permits C & P to recover its costs and fees in this matter.

## B. The Remedial Purposes of CERCLA

Pocket Money argues that the remedial purposes underlying enactment of CERCLA[5] should not enter into the Court's calculus in ruling upon its motion. The Court vigorously disagrees. Responsible statutory interpretation is not conducted in a vacuum. The Court would do no service to the legislature which enacts laws, or the public, for whom the laws are enacted, by donning a judicial blindfold and thoughtlessly invoking the American Rule because it could conjure up language more clearly granting private party plaintiffs the right to recover attorneys' fees or because more definitive language has been used in other federal statutes. While the conflicting opinions of my colleagues on the federal bench have failed to resolve many of the debates over the meanings of particular provisions in CERCLA, one thing about the statute remains crystal-line: its purpose. When the legislature enacts legislation to effectuate a clearly stated purpose, the Court would shirk its responsibility if it were to ignore that purpose in construing the statute's particular terms.

■ The indisputable goal of CERCLA is to facilitate the expeditious cleanup of environmental waste and impose the costs of doing so upon responsible parties. To this end, the statute specifically allows private parties, like C & P, to participate in cleanup and cost recovery actions. Just like the government, whose entitlement to attorneys' fees and costs under the statute is well-established, private parties which initiate cleanup of contaminated sites and sue their confederates in pollution for contribution, "enforce" the statute under any reasonable construction of that term. The notion that only the government can somehow come riding in on a white horse and "enforce" CERC-LA belies common sense and the clear intent of the statute.[6] A private party cost recovery action, conducted in accordance with the provisions of CERCLA, furthers the mission of the legislation to the same extent as government-initiated remedial measures. By acting pursuant to a government-issued administrative order, cleaning up the site itself and seeking contribution from other responsible parties, C & P serves the exact same function as the government, had it stepped in to perform the cleanup and then hit the same parties for the costs of doing so, including legal fees. The presence or absence of a governmental cloak cannot be dispositive. To deny private parties the benefit of the language in CERCLA entitling them to fees and costs expended to draw other polluters into cleanup efforts would create an economic disincentive for responsible parties to take the very action which CERCLA plainly seeks to encourage.

Thus, while the Court holds that there is language in CERCLA clearly sufficient to satisfy the American Rule, it notes further that its conclusion is buttressed by the clear purpose motivating enactment of the statute. The Court is not making or "enhancing" policy by virtue of its decision. *See Stanton Road*, 984 F.2d at 1020 ("We cannot imply authority to award attorneys' fees because we determine that such a rule would enhance public policy."). The Court simply recognizes that thorough analysis of a statute includes consideration of its purpose, if one has been clearly articulated. Insofar as the overriding goal of a piece of legislation inevitably provides clues regarding construction of its particular terms, a court would be remiss in casting it aside as irrelevant to the interpretive process. A court should utilize all of the interpretive tools at its disposal when engaging in statutory analysis. While the Court is well aware of the time-honored principle that statutory interpretation begins with the plain meaning of the terms of the statute at issue,

---

5. *See United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir.1992) ("CERCLA is a remedial statute, [and] its provisions should be construed broadly to avoid frustrating the legislative purpose.").

6. It also belies the facts of this case, in which it appears that the government is one of the major contributors to the contaminated C & R Battery Site. *See* C & P Mem. at 7 n. 2 ("... the United States has produced a stack of documents showing what appear to be hundreds of thousands of pounds of batteries sold to C & R Battery.").

the split in authority on this question illustrates that "plain meaning" guidance alone might not always be sufficient to permit meaningful statutory analysis.

The American Rule does not direct a court to frustrate plain Congressional intent by quibbling over ways in which Congress could possibly have made a private party's entitlement to attorney's fees *more* clear when language already exists in the statute establishing such an entitlement. Thus, the Court holds that C & P is entitled in this action to recover reasonable attorneys' fees and litigation costs, exclusive of those fees and costs attributable to its own share of liability.

## II. *Sovereign Immunity*

██ The Court is well aware that a waiver of sovereign immunity must be "unequivocally expressed," "construed strictly in favor of the sovereign," and "not enlarge[d] ... beyond what the [statutory] language requires." *United States v. Nordic Village, Inc.*, —— U.S. ——, ——, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992) (citations omitted). This issue simply boils down to whether there is language in CERCLA sufficiently explicit to constitute a waiver of sovereign immunity.

The authorities cited on this issue are not particularly helpful. Both parties point to cases where fees and costs either have or have not been imposed against the United States to support their positions. None of these decisions, however, turn on principles of sovereign immunity, but instead, more general notions of whether private party plaintiffs could or could not recover fees and costs when pursuing a CERCLA § 107 action. The language in CERCLA is so clear on this point, however, that the Court need not enlist guidance from other sources:

> Each department, agency, and instrumentality of the United States (including the executive, legislative, and judicial branches of government) shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under 9607 of this title.

42 U.S.C. § 9620(a)(1). CERCLA plainly intends to hold the government liable to the same extent as nongovernmental entities under § 107. The Court cannot conceive of a more "unequivocally expressed" waiver of sovereign immunity. Thus, attorneys' fees and litigation costs will be assessed against the United States, should it be found liable in this action, just like all other private defendants.

## ORDER

This matter is before the Court on defendant Pocket Money Recycling Company, Inc.'s ("Pocket Money's") motion for judgment on the pleadings. For the reasons stated in the accompanying Memorandum Opinion, the motion is DENIED. The plaintiff is entitled to recover reasonable attorneys' fees and litigation costs in this matter, exclusive of those fees and costs attributable to its own share of liability. The United States' argument that there is no waiver of sovereign immunity by the United States as a defendant is REJECTED; should the United States be found liable in this matter, it will be treated identically to its co-defendants when fees and costs are allocated.

It is so ORDERED.