The **CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA, Plaintiff,**

v.

**PECK IRON & METAL CO., INC., et al., Defendants.**

Civ. A. No. 92–506.

United States District Court,
E.D. Virginia,
Richmond Division.

March 8, 1993.

Richard K. Bennett, Shawn Renea Urelius Jordanger, Betty Sinclaire Wommack, McSweeney, Burtch & Crump, Richmond, VA, for plaintiff.

Robert B. Casarona, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Cleveland, Ohio, for Master Metals, Inc.

Stephanie Anne Lipinski Molnar, Midlothian, VA, Jay M. Brodey, Judith E. Overturf, Harrison & Moberly, Indianapolis, IN, for J. Solotken and Co., Inc.

Robert F. Brooks, Robert Martin Rolfe, Hunton & Williams, Richmond, VA, Kelly M. Schoffield, Exxon Corp., Harry B. Wright, Exxon Co., U.S.A., Houston, TX, for Exxon Corp.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on plaintiff's second motion for partial summary judgment on joint and several liability, the cross-motions for summary judgment of defendants Exxon Corporation ("Exxon"), J. Solotken & Company ("Solotken") and Master Metals, Inc. ("Master Metals"), and the motion to dismiss of defendant Kermit Thomas, Jr. t/a S & T Iron & Metal, Inc. ("Thomas" and "S & T"). C & P has named 66 defendants in this motion, all of whom allegedly made at least one direct sale of

spent lead-acid batteries to C & R Battery Company.[1]

A host of defendants filed a composite brief essentially asking the Court to reconsider its decision to impose joint and several liability in this case. Several defendants filed individual briefs disputing the validity of the evidence presented against them, and/or raising legal issues not yet considered in this case which purportedly excuse them from liability.[2]

As an initial matter, the Court enters judgment against all defendants named in this motion which elected not to file individual responses.[3] Documentary evidence has been submitted by C & P to support its contention that all of these defendants sold directly to C & R Battery. If that evidence has not been challenged by the party against whom it has been proffered, it stands unrefuted and is clearly sufficient to support imposition of liability in light of the Court's earlier legal rulings in the case. The Court will address the liability of the defendants who have made separate submissions on an individual basis.

## I. Joint and Several Liability

Despite the exhaustive rebriefing the Court has received on the issue of joint and several liability, it will not be revisited. The Court's rationale for imposing joint and several liability has been previously set forth in its Memorandum Opinion granting C & P's first partial summary judgment motion and remains unchanged. The law of this case is that the harm visited upon the C & R Battery site is indivisible and that the liability of responsible defendants will be joint and several.

## II. Individual Defendants

### A. *Alexandria Scrap Corporation* ("Alexandria Scrap")

Alexandria Scrap simply contends that, as a member of the recycling industry, it participated in the sale of a valuable product, and not disposal or treatment of hazardous waste. This issue was decided the other way in the first round of summary judgment motions. Accordingly, judgment will be entered against Alexandria Scrap.

### B. *Bruce's Iron & Metal, Inc.* ("Bruce's")

Bruce's, while named in C & P's second motion for summary judgment, claims indirect seller status. The Court will defer rul-

1. The factual background of this lawsuit is set forth in the Court's Memorandum Opinion of December 24, 1992, 814 F.Supp. 1281. *See C & P Telephone Co. of Virginia v. Peck Iron & Metal Co.*, 814 F.Supp. 1269 (E.D.Va.1992).

2. Others, in contravention of this Court's supplemental order, simply rehashed legal arguments already resolved in this case which were, according to the Court's instructions, only to be raised in the defendants' composite brief. The Court has, of course, forgiven the zeal of defense counsel and considered all arguments, both new and old, in adjudicating this motion.

3. These defendants are: Howard E. Areheart; Baker Iron & Metal Co., Inc.; Boydton Farm Supply Co.; Brenner Companies, Inc. f/k/a Brenner Iron & Metal Company; Bridgestone/Firestone, Inc.; Carolina Battery & Tire, Inc.; CSX Transportation, Inc.; Joseph M. Decker & Co., Inc.; Doody's Used Auto Parts, Inc.; Electro-Lite Battery Mfg. Co., Inc.; Phillip Gay individually and t/a Farmville Iron & Metal Company; Robert Gill t/a R & R Battery Service, Inc.; Gordon Industries, Inc., L. Gordon Iron & Metal Co. Division; V.H. Holmes & Sons, Inc.; Hopewell Iron & Metal Co., Inc.; Industrial Battery Supply, Inc.; Samuel M. Jones t/a Sam's Scrap Metals; Laurel Paper & Metal, Inc.; Manassas Scrap Metal Co.; Maryland Recycle Co., Inc. f/k/a Ron's Recycling Center; Metal Shippers, Inc.; Metalmart, Inc.; Mid–South Metals, Inc.; Mountain Metal Co., Inc.; National Metals, Inc.; Buddy R. Newton t/a B & N Auto Salvage; Nott Enterprises, Inc. f/k/a Frank H. Nott, Inc.; Oceana Salvage, Inc.; Pascap Co., Inc.; RSR Corporation; Sammett Towing & Salvage, Inc.; Siskin Steel & Supply Company, Inc.; .Randall Lamar Smith, individually and as a general partner of Regency Battery Company, a South Carolina partnership; Southern Foundry and Supply, Inc.; Irving B. Spooner t/a Spooner Salvage; Sydnor Industrial Services, Inc.; Textron, Inc.; TT & E Iron & Metal, Inc.; Eli Viener, individually and as a general partner of Hyman Viener & Sons, a Virginia general partnership; Estate of Harry Viener; Hyman Viener & Sons, a Virginia general partnership; Jacob M. Viener, individually and as a general partner of Hyman Viener & Sons, a Virginia general partnership; Saul Viener, individually and as a general partner of Hyman Viener & Sons, a Virginia general partnership; Vinton Scrap & Metals Company, Inc.; Bernard L. Walls; J.L. Walls t/a Walls Auto Supply; Ricky Wharton t/a Wharton Enterprises; Frank Williams t/a F & R Battery; and Zuckerman Metals, Inc. f/k/a Zuckerman's Scrap Co.

ing on the summary judgment motion as it relates to Bruce's until the record is more fully developed and the Court decides the pending cross-motions for summary judgment involving so-called "indirect seller" defendants.

### C. *Cambridge Iron & Metal Co.* ("Cambridge")

 Cambridge raises an "unclean hands"-type equity-based defense to which the Court is sympathetic. Cambridge argues that a great majority of the batteries it shipped to C & R Battery had been passed on to Cambridge for disposal by C & P Telephone Company of Maryland, an affiliate of plaintiff under the same ownership. Cambridge contends that for the Court "to permit C & P to burden Cambridge with a legal action under these circumstances, let alone obtain summary judgment for essentially unlimited liability, would be an outrage and would scarcely be consistent with recognition of 'such equitable factors as the court determines are appropriate.' 42 U.S.C. § 9613(f)(1)."

Cambridge technically raised this defense at the wrong time in this litigation. The "equitable factors" language in CERCLA cited by Cambridge refers to the *contribution,* and not liability, phase of the case. Nonetheless, the Court has no problem ruling at this point in time that it is not equitable to impose liability on entities like Cambridge for batteries provided by the plaintiff or an affiliate under the same ownership. The Court repeatedly has stressed its adherence to the time-honored maxim that a plaintiff shall not be permitted to profit from its own wrongdoing. Thus, a judgment of joint and several liability shall be entered against Cambridge, but at the apportionment phase of this case, it will be held liable only for those batteries that were not provided to it by C & P Telephone Company of Maryland.

### D. *Coiners' Scrap Iron & Metal, Inc.* ("Coiners")

Coiners argues, like Alexandria Scrap, that as a member of the recycling industry, it is not liable under CERCLA for its battery sales. Coiners also denies that one document submitted by C & P—Bates no. C0001559—reflects any transaction between Coiners and C & R Battery. This argument is a waste of time. The recycling argument already has been resolved and C & P has submitted five receiving reports, just as many C & R Battery statements and copies of four cancelled checks indicating multiple sales from Coiners to C & R Battery. Even if the one document challenged by Coiners is invalid, judgment clearly should be entered against it.

### E. *Cox Armature Works, Inc.* ("Cox")

Cox asserts first that it is not a scrap dealer or recycler of spent batteries. It claims that its place of business was destroyed by fire in August 1984. An unidentified individual from C & R Battery, according to Cox, visited the burned location and offered to purchase from Cox new, but fire-damaged, batteries that Cox intended to use in the course of doing business. Cox allegedly accepted the offer with the understanding that the batteries were to be reconditioned for future use. Cox, however, has not submitted an affidavit or any other evidence to support its version of the facts.

If Cox's story is true, the Court believes that it might be entitled to escape liability on the ground that it did not arrange for the disposal or treatment of a hazardous substance and, thus, is not subject to liability under CERCLA.[4] Cox contends that it had no intent or knowledge that the batteries would be broken and the lead removed. On the contrary, Cox states that it believed the batteries would be reconditioned and put to their intended use. Furthermore, Cox claims that, at the time of this sale, it had absolutely no knowledge that C & R Battery operated a battery breaking business.

But all the Court has to rely upon are the representations of Cox's counsel. Again, Cox has submitted no evidence to support its

---

4. The Court does not definitively resolve this legal question at this time. It simply notes that if there was evidence in the record to support Cox's contentions, the Court would be compelled to closely scrutinize the merits of its legal position.

story. Accordingly, the Court will provisionally enter judgment against Cox. The Court reserves the right, however, to vacate its entry of judgment after the record has been more fully developed as to this defendant.

### F. Exxon

■ There is no dispute that the case against Exxon is premised on a single receiving report and the corroborating affidavit of C & R Battery President Charles Guyton. Exxon argues, however, that a) the receiving report does not possess sufficient indicia of authenticity to serve as the basis for the imposition of liability; b) the corroboration of the report by Guyton is unpersuasive; and c) Exxon has conducted an exhaustive search of its documents and has found no record of the alleged transaction in its corporate records. Exxon has filed a cross-motion for summary judgment on this same ground—that the imposition of CERCLA liability cannot rest on "so slim a reed."

Exxon's argument is meritless. If the rule of this case required corroboration by a *defendant* of C & R's records, most of the defendants would be dismissed by now. If the Court were to dismiss every defendant which claimed that it could not find any record of a transaction to C & R Battery, C & P would probably wind up cleaning up the mess at the C & R Battery site all by itself. C & P's proof, as it relates to Exxon, may not be overwhelming, but it remains unrefuted. Furthermore, it has been corroborated by the Guyton affidavit. Instead of impeaching Guyton, or otherwise meaningfully challenging the assertions he makes in the affidavit, Exxon simply suggests that it is unlikely that Guyton really examined every C & R Battery document thoroughly. This suggestion, backed with no proof, is clearly inadequate to withstand C & P's summary judgment motion.

### G. Robert Fannin t/a Tri–State Copper ("Tri–State")

Tri–State attempts to present a successor liability scenario by asserting that *all* documentation of sales to C & R Battery actually refers to sales made by an entity called "National Metals," a predecessor company of Tri–State. Tri–State is incorrect. C & P has submitted a C & R Battery statement—Bates no. C001187—which shows that Robert Fannin sold batteries directly to C & R. This document remains unchallenged. Liability will accordingly be imposed against this defendant.

### H. J.C. Penney Company, Inc. ("J.C. Penney")

■ J.C. Penney argues that the evidence submitted by C & P is not sufficient to warrant entry of summary judgment. The Court disagrees. C & P has placed before the Court receiving reports, cancelled checks and even a J.C. Penney automotive sales slip evidencing the sale of batteries to C & R Battery. This evidence is unrefuted by J.C. Penney; judgment will be entered against it. J.C. Penney's argument that joint and several liability should not be imposed in this case is moot.

### I. Master Metals

Master Metals attempts to put a new spin on the previously rejected argument of the recycler defendants that they did not "arrange for the disposal or treatment" of the batteries they sold to C & R Battery. Master Metals contends that its batteries were shipped for purposes of "resource recovery," as that term is defined in the Resource Conservation and Recovery Act ("RCRA"). This defendant states that resource recovery is a subcategory of recycling, and that while some recycling may constitute an "arrangement for disposal or treatment," the type of activity in which it engaged—"resource recovery"—does not. Master Metals posits that since "resource recovery" is not included in either the definition of "disposal" or "treatment" in CERCLA, that it cannot be held liable under that statute for its battery sales.

This argument does not wash. RCRA was not intended to relieve from CERCLA liability any party which was involved in activity which could be characterized as "resource recovery." CERCLA imposes liability upon parties for arranging "for disposal or treatment ... of hazardous substances." 42 U.S.C. § 9607(a)(3). The battery breaking

process clearly encompasses either "disposal" or "treatment" or both, as those terms are defined by CERCLA.[5] The activities in which Master Metals engaged constitute arranging for disposal or treatment under CERCLA. Judgment will be entered against Master Metals, and its cross-motion for summary judgment will be denied.

### J. *Midwest Corporation* ("Midwest")

Midwest simply rehashes legal issues already decided. It argues that the harm to site is divisible (i.e., liability should not be joint and several) and that recyclers should not be liable under CERCLA. Judgment will be entered against it.

### K. *New Castle Battery Mfg. Co.* ("New Castle")

It appears that New Castle was an "indirect" seller which sold through Reserve Trading. It looks like C & P should have named New Castle in its motion for summary judgment against the self-proclaimed indirect sellers but, for whatever reason, failed to do so. The Court will defer ruling on the summary judgment motion as it relates to New Castle until the record is more fully developed and the Court decides the pending cross-motions for summary judgment involving so-called "indirect seller" defendants.

### L. *Pocket Money Recycling Co., Inc.* ("Pocket Money")

█ Pocket Money puts an interesting twist on the joint and several liability issue. It contends that while the absence of business records from 1971 to 1980 might make the imposition of joint and several liability appropriate vis-a-vis some parties, such is not the case with Pocket Money because it only first came into existence in May 1981. Thus, according to Pocket Money, all of its dealings with C & R Battery have been documented and its contribution to the site can be precisely determined. It argues that some parties to an action may be jointly and severally liable while others may be only severally liable, and that its particular facts call for imposition only of several liability.

The Court rejects Pocket Money's argument. The decision to impose joint and several liability in this case was not based solely on the nine-year record-keeping void with which we are faced. First and foremost, it was based on the indivisibility of the *harm* at the C & R Battery site. Regardless of the Court's ability to better determine Pocket Money's *battery* contribution than that of other defendants, it is no better able to determine its contribution of hazardous *lead* to the site. A judgment for joint and several liability will be imposed on Pocket Money.

### M. *Solotken*

Without any hard evidence to support its claim, Solotken attempts to withstand summary judgment based on a series of "reasonable inferences." The uncontroverted evidence, however, remains in C & P's ·favor against this defendant. Accordingly, Solotken's cross-motion for summary judgment will be denied, and judgment entered against it.

Solotken's argument is based on the fact that C & R Battery operated a facility in Indianapolis, Indiana, as well as Richmond. Solotken is located in Indianapolis. Solotken argues that "it would be unrealistic, given the cost of shipping [its] batteries, that they were in fact shipped to Richmond, Virginia." Although the batteries it sold to C & R were of the industrial variety and very heavy, according to Solotken, there is no provision for freight charges on the C & R receiving report documenting the sale. This supposedly demonstrates that the batteries were shipped in town to C & R's Indianapolis facility, not the one in Richmond. Solotken has submitted the affidavit of its president in which he states that "it would be reasonable to assume" that Solotken's batteries were not delivered to Richmond.

This statement of opinion, however, does not rebut the testimony of Guyton that all of the batteries for which he produced receiving reports and/or statements were delivered to C & R's Richmond site. Furthermore, Solotken offers no evidence that even if the batteries were *initially* sold to C & R in

---

**5.** CERCLA expressly adopts the definitions of these terms set forth in Section 1004 of RCRA [42 U.S.C. § 6903(3) and (34)]. 42 U.S.C. § 9601(29).

Indianapolis, that they were not later shipped by C & R to its Richmond facility and subsequently broken apart.[6]

### N. *Thomas and S & T*

This defendant raises a valid defense—one which the Court already has endorsed when it was raised by defendant Newell Industries. Thomas argues first that he never "traded as" S & T, but was instead an officer of that corporation. Second, he contends that S & T is "dead and buried" under the relevant case-law and, hence, not a "person" within the meaning of CERCLA. Thomas and S & T have moved to dismiss the case against them on these grounds.

Based on the distinction between "dead" and "dead and buried" corporations recognized in *Traverse Bay Area Intermediate School Dist. v. Hitco, Inc.*, 762 F.Supp. 1298 (W.D.Mich.1991); *United States v. Distler*, 741 F.Supp. 643 (W.D.Ky.1990); and *United States v. Sharon Steel Corp.*, 681 F.Supp. 1492 (D.Utah 1987), the Court is compelled to dismiss S & T if, in fact, it can prove that it is "dead and buried." *Traverse Bay* and *Distler* held that, while CERCLA liability can generally be imposed upon dissolved corporations, *dissolved corporations whose assets have been fully distributed* are beyond the reach of CERCLA. *Traverse Bay*, 762 F.Supp. at 1301–02; *Distler*, 741 F.Supp. at 647 ("[T]he United States has presented no convincing authority to support its position that a corporation which has completely wound down and distributed its assets can be held liable under CERCLA"). *See also Sharon Steel*, 681 F.Supp. at 1498 ("[N]or is the court faced with a situation in which the corporation's assets have been fully distributed and its affairs completely wound up, that is, where the corporation is not only dead but also buried").

Thomas has submitted an affidavit stating that S & T's assets have been fully distributed and that it otherwise meets all of the requirements of a "dead and buried" corporation. C & P has not responded to this affidavit. Accordingly, the Court provisionally grants Thomas and S & T's motion to dismiss and denies C & P's motion for summary judgment against this defendant. The Court reserves the right to revisit this issue should C & P present evidence that S & T possesses any assets such that its self-proclaimed "dead and buried" status would be called into question.

### O. *Union Corporation* ("Union")

Union essentially attacks the validity of the CERCLA § 106 Order issued by the EPA relating to the C & R Battery site. It contends that there were sufficient factual and legal deficiencies in the Order to render it unenforceable. Thus, Union claims, C & P should not be entitled to a presumption that its cleanup activities are necessary and consistent with the National Contingency Plan ("NCP"), but instead should bear the burden of proving that it is acting consistently with the NCP. It further claims that C & P has not carried this burden at this stage of the case and that entry of summary judgment is inappropriate.

The Court fully addressed this issue in the first round of summary judgment. The Court did not base its ruling on any presumption, but rather the fact that the record left no doubt that at least *some* "necessary" and "consistent" response costs have been incurred at the C & R site. The Court held that, at the contribution phase of this case, it would reduce the amount of costs imposed on any defendant who could come forward and present evidence demonstrating the lack of necessity or inconsistency of some or all of the response costs incurred by C & P. Judgment will be entered against Union.

### P. *Estates of Maurice and Reuben Viener* (the "Viener Estates")

Hyman Viener & Sons sold spent lead acid batteries to C & R Battery. Maurice and Reuben Viener were general partners who were involved in the operations of Hyman Viener & Sons during the time batteries

---

**6.** Certainly, Solotken could not argue that by shipping to C & R's Indianapolis branch, it would have become forever insulated from liability should the same entity it sold to (C & R) have shipped the batteries to another one of its locations and disposed of them in an environmentally hurtful manner.

were sold to C & R. There appears to be no dispute over the fact that Maurice and Reuben Viener are jointly and severally liable as a result of the sales to C & R in which they participated. But since these two individuals are deceased, C & P has sued their estates. The Viener Estates contend that such a suit is impermissible under CERCLA.

CERCLA defines a "person" as:

[A]n individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States government, State, municipality, commission, political subdivision of a State, or any interstate body.

42 U.S.C. § 9601(21). The Viener Estates argue that while no estate should be subject to liability on the basis of this definition, it would be especially inappropriate to hold a closed and fully distributed estate liable under CERCLA. The Viener Estates argue that they are analogous to fully dissolved—or "dead and buried"—corporations which, as the Court already has held, are not liable under CERCLA.

Both parties stipulate that the Viener Estates have been closed and their assets fully distributed. Furthermore, both parties agree that neither the Viener Estates nor their beneficiaries were involved in the operations of the Hyman Viener & Sons partnership following the death of Maurice and Reuben Viener.

Courts have split on the issue of whether a decedent's estate constitutes a "person" within the meaning of CERCLA. *Compare Bowen Engineering v. Estate of Reeve*, 799 F.Supp. 467, 475 (D.N.J.1992) with *Snediker Developers Limited Partnership v. Evans*, 773 F.Supp. 984, 990 (E.D.Mich.1991). It does not appear, however, that any of the opinions to address this narrow issue of CERCLA law have considered the unique status potentially enjoyed by a closed and fully distributed estate under the statute. The Court believes that it would be impossible for it to reconcile the caselaw holding that a dead and buried corporation is not a "person" within the meaning of CERCLA with a finding that a similarly "dead and buried" estate may, on the other hand, be susceptible to such liability. In both cases,

all assets have been fully distributed and the beneficiaries of the distribution are not in anyway involved—except by virtue of the distribution—with the predecessor entity which was liable under CERCLA.

C & P's only authority for proceeding against these closed estates is an opinion holding that a CERCLA action remained timely even though it was brought after the expiration of a state's statute of limitations governing actions against estates. *See General Partnership v. Thomopoulos*, 1991 WL 325290 (D.N.H.1991). The *Thomopoulos* court did not address the comparability of a closed estate to a dead and buried corporation or in any meaningful way consider the validity of a CERCLA action against a decedent's estate. It held only that a CERCLA action could not be time-barred by a state probate statute of limitations.

The Estates' position is meritorious, and the Court will deny the summary judgment motion as it pertains to them. It has been stipulated that neither the estates nor their beneficiaries are successors to the partnership that sold to C & R. The beneficiaries do not become covered persons under CERCLA simply because they inherited from someone who was such an entity. Furthermore, the explicit provision in CERCLA creating an "innocent landowner defense" for parties who merely acquire contaminated property by inheritance demonstrates Congress' intent that a person should not be subjected to CERCLA liability merely because property has been inherited. *See Snediker*, 773 F.Supp. at 990.

■ The Court's narrow holding, based on the record before it at this time, is that C & P is not entitled to summary judgment against the Viener Estates. Fully disseminated and closed estates, whose beneficiaries do not remain involved in the decedent's activities which gave rise to CERCLA liability—except by virtue of the inheritance—are not covered under CERCLA and are not subject to liability. This holding expresses no opinion on the general susceptibility of estates to CERCLA liability.

## Conclusion

After all is said and done, the Court unequivocally enters summary judgment on behalf of C & P against 59 of the 66 defendants named in its second motion for summary judgment. An unqualified judgment of joint and several liability will be entered against these parties. The only seven against which an *unqualified* judgment for joint and several liability will *not* be entered are:

### 1. Bruce's

*Holding:* Ruling deferred until the record is more fully developed as to this defendant and the Court decides the pending cross-motions for summary judgment involving so-called "indirect seller" defendants.

### 2. Cambridge

*Holding:* Judgment of joint and several liability entered against Cambridge, but at the apportionment phase of this case, the Court will hold it responsible only for those batteries that were not provided to it by C & P Telephone Company of Maryland.

### 3. Cox

*Holding:* Judgment provisionally entered against Cox. The Court reserves the right, however, to vacate its entry of judgment after the record has been more fully developed as to this defendant.

### 4. New Castle

*Holding:* Ruling deferred until the record is more fully developed as to this defendant and the Court decides the pending cross-motions for summary judgment involving so-called "indirect seller" defendants.

### 5. Thomas/S & T

*Holding:* Its motion to dismiss is provisionally granted; C & P's motion for summary judgment against it is provisionally denied. The Court reserves the right to revisit this issue should C & P present evidence that S & T possesses any assets that would contradict its self-proclaimed "dead and buried" status.

### 6. The Viener Estates [7]

*Holding:* Motion for summary judgment denied as it pertains to these defendants.

---

**7.** The Viener Estates, which the Court has treated identically for purposes of determining their liability, are actually two separate defendants in the case.