NORFOLK SOUTHERN RAILWAY
COMPANY, Plaintiff,

v.

SHULIMSON BROTHERS COMPANY, INC., d/b/a Asheville Metal Recycling; Benjamin Shulimson; Sonja W. Shulimson; Jack Shulimson; Natalie S. Zeitlin; Bernard Shulimson; Alan Shulimson; and Gina Shulimson Hart, Defendants.

Civil No. 1:97CV284.

United States District Court,
W.D. North Carolina,
Asheville Division.

March 19, 1998.

George Ward Hendon, Joy L. Gragg, E. Thomison Holman, Adams, Hendon, Carson, Crow & Saenger, P.A., Asheville, NC, for Norfolk Southern Ry. Co.

Shulimson Brothers Company, Inc., Asheville, NC, pro se.

Robert J. Deutsch, Powell & Deutsch, Asheville, NC, for Benjamin Shulimson.

Sonja W. Shulimson, Asheville, NC, pro se.

John Olsen, Asheville, NC, Mark E. Freeze, John C. McElwaine, Kane Jorden von Oppenfeld Bischoff & Biskind, Columbia, SC, for Jack Shulimson, Natalie S. Zeitlin and Bernard Shulimson.

Gina Shulimson Hart, Beverly, MA, pro se.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Plaintiff's timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, this Court referred the motions to dismiss of Defendants Natalie Zeitlin, Jack Shulimson, Bernard Shulimson and Gina Hart to the Magistrate Judge for a recommendation as to disposition. For the reasons state below, the motions will be allowed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the complaint, Shulimson Brothers Company, Inc. (the Corporation) operates Asheville Metal Recycling on a parcel of land owned by the Plaintiff. Beginning in 1956, Plaintiff's predecessor corporation leased the land to the Shulimson Partnership (the Partnership) which operated a scrap metal business at the site. In 1958, the partners formed the Corporation and thereafter, leases or licenses were extended to the Corporation for the next 40 years. The last lease became effective on November 1, 1996, for a five-year term. However, beginning in November 1991, the lease provided that the land could not be used for any purpose other than storage and handling of non-contaminated ferrous and non-ferrous metals and recyclable materials.

■ Of the three brothers who formed the Partnership, Benjamin, William and Morris, only Benjamin is still living. William died in September 1983 leaving three children, Jack, Natalie and Bernard, who received distribu-

tions from his estate.[1]  Morris died in December 1992 leaving his widow, Sonja, and one living child, Gina, both of whom received distributions.  **Motions and Answers of Shulimson Brothers Company, Inc. and Sonja W. Shulimson and Requests for Trial by Jury, filed November 2, 1997, at ¶ 15.**

Plaintiff sued the Corporation, Benjamin, Sonja, William's children, Gina and Morris' grandson, Alan, to recover the costs of hazardous waste clean-up required by federal (Comprehensive Environmental Response, Compensation and Liability Act of 1980, commonly called CERCLA) and state law (North Carolina Oil Pollution and Hazardous Substances Control Act of 1978).  Plaintiff claims the release of hazardous waste occurred during the occupancy of the Corporation's scrap metal business.  Plaintiff has also alleged common law claims for breach of contract, unjust enrichment, negligence, nuisance and constructive trust.

William's children and Gina, Morris' sole surviving child, have moved to dismiss the complaint on the ground that CERCLA was not intended to reach the distributees of deceased operators of such businesses.

## II.  STANDARD OF REVIEW

The motions are based on the failure of the complaint to state causes of action upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6).  In ruling on a motion to dismiss for failure to state a claim, the court must "accept the factual allegations in the Plaintiffs' complaint and must construe those facts in the light most favorable to the Plaintiffs.... [Dismissal may occur] only if it appears beyond doubt that the Plaintiffs can prove no

set of facts in support of their claim that would entitle them to relief."  *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997); Shepard's, *Motions in Federal Court*, § 5.124, at 367 (2d ed.1991).  Conclusory allegations are examined in light of the factual claims.  *Id.*  "To survive a motion under Fed. R.Civ.P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief."  *Id.*, § 5.123, at 366.  If "relief could be granted under any set of facts that could be proved consistent with the allegations," the motion must be denied.  *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## III.  DISCUSSION

█  Congress enacted CERCLA to protect public health and the environment from inactive hazardous waste sites. CERCLA is a comprehensive remedial statutory scheme, and as such, the courts must construe its provisions liberally to avoid frustrating the legislature's purpose. CERCLA encourages private individuals to clean up environmental hazards by permitting them to recover specified costs of cleanup from parties defined by CERCLA to be responsible for the hazards.... In order to recover the costs of cleanup under CERCLA, a plaintiff must show (1) that the defendant "owned or operated" a "facility" from which there was a "release" or "threatened release" of a hazardous substance, (2) that the defendant is a "potentially responsible person," and (3) that the plaintiff incurred necessary cleanup costs

---

1.  The information concerning dates of death and administration of estates was provided by the Defendants in their briefs supporting the motions to dismiss but was not contained within the allegations of the complaint.  Rule 12(b)(6) states that if matters outside the pleadings are "presented to and not excluded by the court" then the motion should be converted to one for summary judgment and the parties given notice and an opportunity to respond.  Fed.R.Civ.P. 12(b). The information contained within the Defendants' brief, however, is a matter of public record and the Court does not deem it necessary to convert the motion.  *See, e.g., Norfolk Federation of Business Dist. v. H.U.D.*, 932 F.Supp. 730, 736

(E.D.Va.1996) (**"[A] brief or memorandum submitted in support of a motion to dismiss is not considered to be outside of the pleadings...."**), *aff'd*, 103 F.3d 119 (table), 1996 WL 671293 *1 (4th Cir.1996) (**"In short, a court may consider matters of public record, items appearing in the record of the case, as well as exhibits attached to the complaint."**); *accord, Anheuser–Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir.1995), *vacated on other grounds*, 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996), *on remand*, 101 F.3d 325 (4th Cir.1996) (**considering the Supreme Court directive and readopting opinion at 63 F.3d 1305**).

"consistent with the national contingency plan."

*Westfarm Assoc., Ltd. v. Washington Suburban Sanitary Comm'n,* 66 F.3d 669, 677 (4th Cir.1995), *cert. denied,* 517 U.S. 1103, 116 S.Ct. 1318, 134 L.Ed.2d 471 (1996) (citations omitted). Thus, in determining whether Plaintiff has stated a claim against these Defendants, the Court must consider the essential elements of the cause of action in view of the Fourth Circuit's instruction to "construe [the CERCLA] provisions liberally to avoid frustrating the legislature's purpose." *Id.* A "responsible person" under the statute includes the current owner or operator of the facility, any person who owned or operated the facility at the time of the disposal, any person who arranged for the disposal of hazardous substances at the facility and any person who accepted the same for transport to treatment facilities. *Nurad, Inc. v. William E. Hooper & Sons, Co.,* 966 F.2d 837, 841 (4th Cir.), *cert. denied,* 506 U.S. 940, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992). The only issue for resolution on this motion is whether or not the distributees of William and Morris under their wills may be included in the definition of "responsible person" or may be held accountable under a trust fund theory.[2]

This involves an interpretation of state law within the context of the CERCLA scheme. In North Carolina,

> [a]ll claims against a decedent's estate which arose before the death of the decedent ... which are not presented to the personal representative ... within 90 days after ... notice [from the personal representative of the probate proceedings] are forever barred.... All claims against a decedent's estate which arise at or after the death of the decedent ... are forever barred against the estate, the personal representative, ... the heirs, and the devisees of the decedent unless presented to the personal representative ... within six months after the date on which the claim arises.

N.C.Gen.Stat. § 28A–19–3(a), (b). The Defendants' motions are based on the fact that this lawsuit, begun in 1997, is an untimely claim against the estates of William and Morris and therefore is time-barred. After William's death in September 1983, his personal representative published notification that claims against the estate must be submitted by April 12, 1994; the assets of his estate were thereafter distributed to his children and a final accounting completed within that year. While no information has been provided concerning the administration of Morris' estate, he died in 1992 and in his wife's answer to the complaint, she states that in February 1993, all shares of Morris' children were purchased by the Corporation. **Motions and Answers,** at ¶ 10. Plaintiff has not disputed that Morris' estate was completed without a claim being made against it. Nor does Plaintiff allege any of these Defendants were in any manner involved with the Corporation either before or after the alleged release of hazardous substances.

Instead, Plaintiff argues that North Carolina's "nonclaim" statute has no applicability here because the distributees of William and Morris hold the assets of their estates in trust, citing *State ex. rel. Howes v. W.R. Peele, Sr. Trust,* 876 F.Supp. 733, 743 (E.D.N.C.1995). However, that case is factually distinguishable because there "[w]hile some assets of the estate devolved to individual beneficiaries, the bulk of the estate's assets flowed to the Trust. Madeline [the decedent's wife] not only is an individual beneficiary under W.R. Peele, Sr.'s will, but also she is an income beneficiary of the Trust." *Id.* Moreover, unlike the case at hand, the plaintiff in *Howes* did not pursue claims against other individual beneficiaries. And, Judge Britt expressly declined to rule that CERCLA preempts the North Carolina nonclaim statute which is exactly what the Plaintiff here seeks. *See, Howes v. W.R. Peele, Sr. Trust,* 889 F.Supp. 849, 855 (E.D.N.C.1995).

■ This Court finds the reasoning of the Third Circuit, the only court of appeals to have published an opinion on this precise issue, compelling.

> [F]ederal preemption of state law is not favored. This is particularly true in areas of law traditionally dominated by the indi-

---

**2.** The fact that the Corporation was a tenant of the property is not an obstacle. *Id.*

vidual states. In an area that has been traditionally occupied by the states, the court must assume that the prerogatives of the states were not to be superseded by a federal law unless it is the clear and manifest purpose of Congress. Indeed, for preemption to occur in a field traditionally occupied by the states, there must be a "sharp" conflict between state law and federal policy. Since probate matters traditionally have been nearly the exclusive concern of the states, there is a presumption against preemption of state law.

*Witco Corp. v. Beekhuis*, 38 F.3d 682, 687 (3rd Cir.1994) (citations omitted). The Fourth Circuit also recognizes that state probate laws are "of particular state concern;" however, "when a state probate statute 'sharply' interferes with, or is directly contrary to a federal law, the state statute must yield."[3] *Cox v. Shalala*, 112 F.3d 151, 154 (4th Cir.1997) (footnote added) (citations omitted). A "sharp conflict" may occur when it is physically impossible to comply with both the federal and state statutes. *Id.* Such is not the case at hand because if the Plaintiff had presented a claim pursuant to N.C.Gen. Stat. § 28A–19–1[4] to the personal representatives of the estates of William and Morris, then compliance with both the federal and state statutes would have been possible. *See, e.g., Witco, supra*, 38 F.3d at 688.

However, a "sharp" conflict may also occur when the state law stands as an obstacle to the objectives of Congress in passing the federal statute. *Witco*, 38 F.3d at 687 (quoting *California Federal Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280–81, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987)). It has already been noted that the Congressional objective in passing CERCLA was a pervasive remedial scheme designed to protect public health and the environment from the hazards of inactive waste sites. *Westfarm Assoc.*, 66 F.3d at 677. Nonetheless, there is nothing in the

language of the statute suggesting that "Congress intended to preempt state law governing claims against decedents' estates." *Witco*, 38 F.3d at 689.

The statute does not impose liability directly on the estates of those who may be found to be "potentially responsible parties." 42 U.S.C. § 9601(21) (**"The term 'person' means an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity** . . . ."); 42 U.S.C. § 9607 (**defining "covered persons"**). Plaintiff argues that subsection (n) of § 9607 imposes liability on estates and beneficiaries because it provides that the liability of a fiduciary may not exceed the sum of the assets held in a fiduciary capacity. Nonetheless, while a fiduciary is defined to include an executor, personal representative or administrator, the statute also provides there is no private right of action against the fiduciary. 42 U.S.C. § 9607(n)(5)(A)(i), (n)(5)(B). Moreover,

> Congress expressly endorsed traditional rules of property descent by creating an exception to the CERCLA liability scheme called the "innocent landowner defense" under section 9607(b)(3). . . . Under [this defense], a person who inherits contaminated property thereby becoming an owner and a potentially responsible party under CERCLA, is entitled to assert the innocent landowner defense and escape[ ] liability. Congress created this exception to CERCLA liability in order not to disturb state law controlling the descent and distribution of property. It would be illogical for us to conclude that Congress impliedly preempted state probate law to expand a CERCLA claimant's right to seek contribution against property of a deceased potentially responsible party, when Congress expressly narrowed CERCLA li-

---

**3.** There are three methods by which federal preemption may occur: Congress may expressly preempt state law by directly stating its intention to do so; Congress may so pervasively occupy the field as to have preempted state law; or when neither of the above is present, there may be an actual conflict between state and federal law. *Cox v. Shalala*, 112 F.3d 151, 154 (4th Cir.1997). Only the third method is at issue.

**4.** This statute makes provisions for several methods of presenting claims to the estate of a decedent. In that event, N.C.Gen.Stat. § 28A–10–5 would have required the Clerk of Superior Court to order the personal representative to retain sufficient funds to pay the claim once liquidated.

ability with regard to the contaminated facility itself. . . .

*Witco,* 38 F.3d at 689. Thus, under the statutory scheme, "beneficiaries do not become covered persons under CERCLA simply because they inherited from someone who was [a covered] entity." *Chesapeake & Potomac Telephone Co. of Virginia v. Peck Iron & Metal Co., Inc.,* 814 F.Supp. 1285, 1292 (E.D.Va.1993), *opn. clarified on other grounds by,* 822 F.Supp. 322 (E.D.Va.1993).

Nor does this interpretation conflict with the remedial purposes of the statute. "Congress had well in mind that persons who dump or store hazardous waste sometimes cannot be located or may be deceased or judgment-proof." *Westfarm Assoc.,* 66 F.3d at 680 (quoting *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1045 (2d Cir. 1985)) (which cites S.Rep. No. 848, 96th Cong., 2d Sess. 16 (1980), **reprinted in 1 Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 323 (Comm.Print 1983)).** The fact that Plaintiff as the property owner may not be able to recoup contribution from all responsible parties in no manner prevents the actual clean-up which has begun and apparently continues at the site.

█ In addition, although the Plaintiff has a statutory right under CERCLA to seek contribution, such claims "shall be brought in accordance with this section and the Federal Rule of Civil Procedure." 42 U.S.C. § 9613(f). The rules provide that the "capacity of an individual . . . to . . . be sued shall be determined by the law of the individual's domicile." Fed.R.Civ.P. 17(b). "As a result, state capacity statutes . . . are not preempted under CERCLA." *Witco,* 38 F.3d at 689. And, in North Carolina, the nonclaim statute renders this claim timebarred. N.C.Gen. Stat. § 28A–19–3.

█ Nor does this holding "frustrate the statutory policy of encouraging 'voluntary private action to remedy environmental hazards.'" *Nurad,* 966 F.2d at 845. Plaintiff may pursue its claims against the Corporation and its corporate officers. "We sit as a court, not a super-legislature. While the public policy arguments raised by [Plaintiff] may be meritorious, we can only presume that those arguments were weighed and rejected by Congress when it enacted CERCLA without [a definition including beneficiaries]." *Westfarm Assoc.,* 66 F.3d at 680. The "statutory scheme does not take a simplistic view" of who qualifies as a potentially responsible person, and this Court is not inclined to expand its language. *Id.,* at 681.

Courts would not be warranted, therefore, in pointing to the "remedial legislation" litany as a reason for filling in the blanks left by this sketchy legislative history to impose liability under nearly every conceivable scenario. Thus, while the liability provisions concerning facility operators should be construed so that financial responsibility for clean-up operations falls upon those entities that contributed to the environmental problem, the widest net possible ought not be cast in order to snare those who are either innocently or tangentially tied to the facility at issue. [ ] "Congress intended that those responsible for disposal of chemical poisons bear the cost and responsibility for remedying the harmful conditions *they created.* . . . [W]e adhere to the tenet that liability attaches only to those parties who are culpable in the sense that they, by some realistic measure, helped to create the harmful conditions."

*United States v. Cordova Chemical Co. of Michigan,* 113 F.3d 572, 578 (6th Cir.), *cert. granted,* —— U.S. ——, 118 S.Ct. 621, 139 L.Ed.2d 506 (1997) (emphasis in original) (citations omitted). The Court therefore concludes that fully distributed and closed estates whose beneficiaries have not been involved in the activities which gave rise to the CERCLA liability by any method other than inheritance are not subject to liability under the statute. *Chesapeake & Potomac Telephone Co.,* 814 F.Supp. at 1292. It appearing that no other claims have been asserted against these Defendants, the action is dismissed as to them.[5]

**5.** The allegations of the complaint ambiguously refer to all Defendants in each separate cause of action. However, in response to the motion to dismiss the entire action, Plaintiff has not

The Court notes that Alan Shulimson is named as a Defendant, but there is no return of service contained in the record.

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, ... on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant ... provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

Plaintiff is hereby placed on notice that unless good cause is shown to the Court for failure to effect service of the summons and complaint on Defendant Alan Shulimson within fifteen days from entry of this Order, the Court shall enter an Order dismissing this matter as to this Defendant.

**IT IS, THEREFORE, ORDERED** that the Defendants' motions are hereby **GRANTED** and this action is dismissed as to Defendants Gina Shulimson Hart, Jack Shulimson, Natalie Shulimson Zeitlin, and Bernard Shulimson.

**IT IS FURTHER ORDERED** that the Plaintiff show good cause within fifteen days of entry of this Order for the failure to effect service on the Defendant Alan Shulimson within 120 days from the filing of the complaint; and

**IT IS FURTHER ORDERED** that failure of the Plaintiff to respond in writing within fifteen days shall result in entry of dismissal without prejudice as to that Defendant.

claimed that any cause of action other than the CERCLA claim is stated. Likewise, the objections filed to the Magistrate Judge's report do not object to his recommendation that the action be dismissed because the only claim alleged against these Defendants is the CERCLA claim.